UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- x
ROBERT PRICHARD, JENNIFER BOCCIO, and :
MARTIN GRAVES,                          :
                                        :         05 Civ. 4672 (JSR)
            Plaintiffs,                 :
                                        :         OPINION AND ORDER
            -v-                         :
                                        :
164 LUDLOW CORP., GARY AUSLANDER,       :
LEONARD EASTER, Esq., ALEXANDRA         :
WOLCOTT, a/k/a SANDRA WOLCOTT,          :
MICHAEL TRAIN, THOMAS JOHNSON, ROBERT   :
WORTH, JOHN DOE, INC., and JOHN DOES    :
1-6,                                    :
                                        :
            Defendants.                 :
---------------------------------------- x

JED S. RAKOFF, U.S.D.J.

When a simple attempt to collect an unpaid debt is dressed up as a "RICO" action, it inures to no one's benefit but those who hold the legal profession in low esteem. Here, plaintiffs Robert Prichard, Jennifer Boccio, and Martin Graves, have commenced what purports to be a fraud and racketeering action against defendants 164 Ludlow Corporation ("164 Ludlow"), Gary Auslander, Leonard Easter, Esq., Sandra Wolcott, Michael Train, Thomas Johnson, Robert Worth, "John Doe, Inc.," and six "John Does." Their initial complaint was deficient on its face, but they were given leave to replead. See Tr., June 20, 2005. Their Amended Complaint propounds two claims under the Racketeer Influenced and Corrupt Organization Act ("RICO"); one fraudulent inducement claim (Count 3), one claim of fraud collateral to contract (Count 4), one breach of contract claim (Count 5), one claim of promissory estoppel and detrimental reliance (Count 6), one unjust enrichment claim (Count 7), and one claim of

oppression of minority shareholders (Count 8). Defendants, in various combinations, move to dismiss all claims.[1] For the following reasons, the motions are granted.

The essential allegations of the Amended Complaint are as follows. In November 1997, a number of persons, including plaintiffs and the individual defendants, purchased stock in 164 Ludlow for the purpose of opening and operating a new restaurant and cabaret space called "Baby Jupiter" at 170 Orchard Street, New York, NY. Am. Compl. ¶ 17; see 164 Ludlow Corp. Stock Purchase Agreement, ¶ 2(i), attached as Ex. A to Defendants' Notice of Motion.[2] According to plaintiffs, the defendants never secured the necessary cabaret permits and licenses; so, from the start, Baby Jupiter was operated solely as a restaurant. Am. Compl. ¶ 18.

Plaintiffs allege that defendants never intended to operate Baby Jupiter as a legitimate business, but rather sought to use it as a front for a "bust out" scheme, whereby they would solicit capital

---

[1] In response, plaintiffs have voluntarily withdrawn Count 8. See Plaintiffs' Memorandum of Law in Response to Defendants' Motions to Dismiss ("Pls. Mem.") at 20 n. 19.

[2] Plaintiffs purchase of stock in 164 Ludlow is repeatedly referenced in the Amended Complaint, see, e.g., Am. Compl. ¶¶ 17-18, 153, and therefore the relevant Stock Purchase Agreement may be considered on a motion to dismiss, see Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002). Additionally, on a motion to dismiss, a court may consider documents not attached to the pleadings when the party whose claim is sought to be dismissed has notice of those documents and has relied on them in framing the claim in issue. See Cortec Indus. Inc. v. Sum Holdings L.P., 949 F.2d 42, 48 (2d Cir. 1991).

investments that would later be diverted to the defendants.  Id. ¶ 19.  Plaintiffs' suspicions were initially aroused when, despite brisk business, Baby Jupiter's reported financial results were lackluster.  Id. ¶ 21.  Thereafter, the bookkeeper of Baby Jupiter discovered that defendant Auslander, the chief operator of the business, see id. ¶ 17, was allegedly keeping two sets of books, misappropriating corporate funds, committing tax evasion, and destroying company records.  Id. ¶ 22.

Between February 1999, and August 1999, the Board of 164 Ludlow took several steps to address Auslander's activities, including conducting an internal audit.  Id. ¶¶ 24-41.  Plaintiffs, however, determined that it was not in their best interests to remain as shareholders of 164 Ludlow and decided, instead, to sell their shares back to defendants.  Id. ¶¶ 42-43.  On December 1, 1999, defendants purchased plaintiffs' shares for $156,000, with $30,000 payable immediately and $126,000 to be paid in monthly installments, pursuant to a promissory note secured by an interest in an Auslander-related company with the unlikely name of Requisite Boogie, Inc. (the "Security").  Id. ¶¶ 44, 47.[3]  Plaintiffs complain that, because of Auslander's and other defendants' allegedly fraudulent activities, the buyout price was less than it otherwise would have been.

Following the buyout, plaintiffs allege that defendants began dissipating the Security while, at the same time, lulling plaintiffs

---

[3] While the Amended Complaint refers to "Requisite Boogie, Inc.," the Security Agreement itself refers to it as "Requisite Bootie, Inc."

3

into a false sense of complacency regarding defendants' ability to pay the full balance due. To this end, defendants made 15 of the payments due under the note (although two were slightly untimely and one was $834 less than the amount called for), all with "the specific intent . . . to prevent plaintiffs from realizing that the named defendants had no intention of paying off the Promissory Note in full and thereby buy time to loot the security for the Promissory Note." id. ¶ 52. In addition, defendant Easter sent several allegedly fraudulent e-mails to plaintiffs between March 2001 and April 2002 that plaintiffs claim were meant to lull plaintiffs into thinking that they would be made whole and to delay their moving against the Security that guaranteed the Promissory Note. Id. ¶ 53.

In late 2001, Baby Jupiter was sold, but only for $76,000. Id. ¶ 61. Defendants sent plaintiffs a check from the proceeds in the amount of $23,000, but the check bounced and was replaced, in December 2001, with another check for $19,500. Defendant Easter, however, continued to send emails suggesting that further payments would be forthcoming. Am. Compl. ¶ 64. All of this, plaintiffs contend, was part of defendants' continuing attempts to trick plaintiffs into believing that full payment on the Promissory Note was imminent.

Finally, in April 2002, Easter is alleged to have made a proposal, not authorized by all the defendants, to settle the balance due plaintiffs for $55,000. Id. ¶¶ 67-68. This offer proved unsatisfactory to plaintiffs, who instead filed this suit on May 13, 2005. At present, plaintiffs contend that approximately $132,437 is

4

outstanding on the promissory note and that "absolutely nothing remains of the security for the Promissory Note." Id. ¶¶ 70-71.

From the foregoing, one might reasonably infer that plaintiffs are simply disgruntled creditors. But, construing most favorably their allegations of fraud and racketeering, they have still failed to make out the prerequisites to either of their RICO claims.

To begin with, plaintiffs, who proceed here in their individual capacities, cannot base their RICO claims on frauds they say occurred prior to their selling their shares in 164 Ludlow to defendants -- e.g., "a course of conduct of splitting them off from the corporation, and then defrauding them of the value of their purchase price," Pls. Mem. at 3, or, as plaintiffs state in the Amended Complaint, the forced sale of their shares, Am. Compl. ¶ 95; the devaluation of the value of their shares due to alleged tax evasion, id. ¶ 96; the devaluation of the value of their shares due to embezzlement, id. ¶ 97; and the devaluation of their investment due to conversion, id. ¶ 98. These injuries were suffered, if at all, while plaintiffs were shareholders of 164 Ludlow and, thus, are derivative in nature. See Rand v. Anaconda-Ericsson, Inc., 794 F.2d 843, 849 (2d Cir. 1986) (finding that the well-settled principle of corporate law that a shareholder does not have standing to bring an individual action to redress injuries to a corporation also applies to RICO claims and that a "diminution in value of the corporate assets is insufficient direct harm to give the shareholder standing to sue in his own right.") (internal quotation marks omitted); see

5

also Lakonia Mgmt. Ltd. v. Meriwether, 106 F. Supp. 2d 540, 551 (S.D.N.Y. 2000) (same).[4]

Careful review of the Amended Complaint reveals that the only injury to plaintiffs' "business or property" alleged to have been suffered by plaintiffs after they sold their theirs shares in 164 Ludlow is their inability to recover full payment on their note, which they allege is the result of their being fraudulently lulled into waiting for payment while the Security was being dissipated. Am. Compl. ¶ 99.[5] But with respect to this alleged scheme to dissipate the Security and thus deprive them of their money and property, plaintiffs only allege two kinds of fraudulent acts: the making of the 15 partial payments between February 2000 and February 2001, and the emails sent by Easter between March 2001 and April 2002. As to the payments, there was nothing fraudulent about them, at least nothing that comes close to meeting the standards of Rule 9(b), Fed. R. Civ. P., and plaintiffs' conclusory allegation that the making of these mostly timely payments was motivated by the

---

[4] Furthermore, the so-called "special duty exception," which provides an exception to the general rule that shareholders do not have individual standing under RICO to redress wrongs to the corporations in which they own stock, see Lakonia, 106 F. Supp. 2d at 551 n. 21, is inapplicable to plaintiffs here, because plaintiffs' allegations of fraudulent inducement do not come close to meeting the strict pleading requirements of Rule 9(b), Fed. R. Civ. P.

[5] Any argument by plaintiffs that they also suffered RICO injury "by their loss of business opportunity in the restaurant" fails, since this alleged injury, referenced only in Count 6, is not referenced in the RICO counts and, in any event, is not pleaded with the requisite particularity to qualify under those counts.

6

fraudulent purpose of lulling cannot substitute for a failure to allege with particularity how they constituted misrepresentations. As to the emails, they did not last long enough to support a RICO "pattern." See Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 242-43 (2d Cir. 1999).

Accordingly, the RICO claims (Counts 1 and 2) must be dismissed. All that then remains are state causes of action, and it would be singularly inappropriate for the Court to exercise pendant jurisdiction over what is then just a barely camouflaged collection action. Accordingly, while the RICO claims are dismissed with prejudice, the state law claims are dismissed without prejudice (except for Count 8, which is dismissed with prejudice, see n.1, supra). The Clerk of the Court is therefore directed to enter judgment dismissing the Amended Complaint in its entirety.

SO ORDERED.

_____
JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
       October 12, 2005